Joseph D. Quinn, Jr., J.
Defendant has been indicted on four counts of reckless endangerment in the first degree, two counts of attempted assault in the first degree, four counts of menacing, one count of prohibited use of a weapon, in violation of former section 265.35 (subd 4, par [a]) of the Penal Law, one count of criminal mischief in the fourth degree, and on one count of leaving the scene of an accident without reporting, in violation of former section 600 of the Vehicle and Traffic Law.
Some 32 months after he was charged and seven months after he first asserted his speedy trial rights, defendant has renewed an application, previously rejected by the County Court, to dismiss the indictment against him upon the ground that he has been denied his constitutional right to a speedy trial.
Defendant is a 26-year-old white male who, at the time of the incident which gave rise to the charges here, had been employed as a police officer by the City of New York for a period of about two and one-half years. His assignments involved duty in high crime areas of Harlem and the South Bronx, where he had been exposed to sniper fire and had been injured in the course of effecting arrests. He had received several departmental commendations for his police duty.
Defendant was off duty on May 16, 1972, and, at about nine o’clock in the evening of that day, he became involved in a minor traffic accident while driving on Franklin Avenue in the City of New Rochelle. Claiming that shots had been fired in his direction from a "yellow foreign car” just before the accident occurred, he is said to have stopped several motorists and to have demanded their licenses, and he allegedly pursued a vehicle from which he suspected the shots had come. In the course of such pursuit, being armed, he fired a revolver, first into the air, as if in warning, and then into a van which was in the area.
According to the testimony of a New Rochelle patrolman who testified at a Huntley hearing before this court, and who was one of two radio car officers dispatched to the locale "to assist an off-duty patrolman”, and who arrived there a few minutes after the accident and the ensuing events had occurred, defendant’s appearance and his actions seemed to be *766 "normal and proper”. As this New Rochelle policeman recounted it, defendant willingly got into the radio car and accompanied the two local officers to the police station, where, after being questioned for about two and one-half hours, he was placed under arrest.
A felony complaint was filed against defendant in the City Court of New Rochelle on May 17, 1972. After he had been arraigned on this complaint and had interposed a not guilty plea to it, defendant was released on bail.
On the same date that he was so arraigned, defendant was suspended from duty by the New York City Police Department by virtue of the criminal charges filed against him.
A preliminary hearing was conducted in New Rochelle City Court on June 8, 1972, and, at the conclusion of that hearing, defendant was held for action of the Grand Jury. The matter was presented before the Grand Jury on September 13, 1972, and the indictment here was returned on September 26, 1972.
Defendant was arraigned on the indictment in County Court on the 4th of October, 1972, at which time the local court bail was continued and the case was adjourned for 30 days for defense motions. From records supplied by the calendar clerk’s office or the office of the District Attorney, it appears that the People indicated that they were ready for trial when the case was called on November 6, 1972, and again on December 4, 1972. On this latter date, defendant’s former attorney was relieved and his present attorneys appeared and were substituted. These records also show that, at the request of the newly retained attorneys, the case was adjourned for all purposes until January 4, 1973.
In December of 1972, defendant underwent examinations by Dr. Nicholas J. Locascio, a Yonkers psychiatrist whom defense attorneys had worked with in the process of trying another criminal cause in which a State Trooper was acquitted of murder charges. This physician, who had acquired extensive experience and reputation in treating soldiers suffering from a temporary condition known as combat fatigue while serving as an Army medical officer with the rank of colonel in World War II, viewed the irrational behavior which gave rise to the criminal charges against defendant as an overreaction to an imagined threat to security stimulated by the accused’s police training and his frequent encounters with hazardous criminal activity. Analogizing defendant’s conduct to that of a soldier afflicted by combat fatigue, this psychiatrist concluded that *767 there had been a temporary derangement which did not result in criminal liability.
On the basis of this expert’s opinion, bolstered by psychological tests administered by a Dr. Robert Hilpert, defendant’s attorneys served the District Attorney with written notice of an insanity defense on January 3, 1973, and, at the same time, offered to submit defendant to examination by a psychiatrist of the People’s choosing without need for a formal application for such relief. This offer was never acted upon.
Appearing before the County Court on January 4, 1973, both sides answered ready for trial. The cause was added to the ready trial calendar of that court on March 19, 1973. The case remained inert for a year and until March 26, 1974, when both sides again appeared in County Court and indicated their readiness for trial.
On May 6, 1974, defendant moved to dismiss the indictment on speedy trial grounds, alleging special prejudice by reason of the death of the defense psychiatrist, Dr. Locascio, earlier that year. The People served answering papers on May 24, 1974, and the application was marked fully submitted on May 28, 1974. The answering papers served by the District Attorney noted that "the People have, on the record, been ready to proceed to trial since December 4, 1972.” Those papers are replete with accusations that defendant’s attorneys are answerable for all delays in the case during the period from December 4, 1972, to March 19, 1973, and during the additional period from April 22, 1974, until May 6, 1974, when the speedy trial motion was made. Court congestion and the practice of bringing jail cases to trial before bail cases were cited by the prosecutor as justification for the period of slightly more than one year, between March 19, 1973, and March 26, 1974, during which the action hung in suspense, without so much as an entry in the records of either the calendar clerk or the District Attorney.
By way of replication, defendant denied blame for any appreciable delay and charged the District Attorney with manipulating the court calendars to suit his own trial priorities, and, in that manner, with bringing about congestion in the courts.
Apparently County Court did not set great store by these charges and countercharges. In a one-paper decision and order which came down on June 12, 1974, that court held that "the delay in the instant case is attributable to the congestion of *768 the court calendars and to the fact that 'jail* cases are necessarily given precedence.” Going on, County Court denied the defense motion, finding that there had been no undue delay and no prejudice to defendant. In this latter connection, the court stated that, "although Dr. Locascio will be unavailable to the defense due to his unfortunate death * * * defendant will not be prejudiced. Any subsequent [psychiatric] examination of the defendant by a newly retained expert with the aid of Dr. Hilpert’s [psychological] test results would not be unduly affected by the passage of time.”
Following entry of that decision and order, and on June 19, 1974, both sides again appeared in County Court and declared their readiness for trial. On November 14, 1974, the case was marked ready subject to an available part.
The action was transferred up to Supreme Court for trial on January 20, 1975, by order of the District Administrative Justice. According to Westchester County’s computerized criminal trial calendar, there were at that time but six days remaining for this case under the time limitations of New York’s speedy trial rule (CPL 30.30).
On the very day that this cause was transferred, defense counsel appeared and stated his intention to orally renew the speedy trial motion which had been earlier denied by County Court. The oral application was later heard in part by this court, but was denied under constraint of the holdings of the Second Department in People v Ryan (42 AD2d 869) and of the First Department in People v Rodriguez (45 AD2d 41), requiring a motion to dismiss an indictment under CPL 210.20 to be made in writing and upon notice. Leave was given to renew upon proper papers, and renewal was made upon an order to show cause signed by the undersigned on January 28, 1975, and made returnable on January 30, 1975, and upon supporting papers attached to the order.
According to the show cause order, defendant’s demand is for dismissal of the indictment against him "pursuant to Section 30.30 of the Criminal Procedure Law” "on the grounds that he has been prejudiced because of his [sic] denial of a speedy trial”, and for "such other and further relief as might be just, proper and equitable.”
On argument and in papers subsequently served and filed, defense counsel asked that the application be expanded to encompass a claim of deprivation of due process and a prayer *769 for dismissal of the indictment in furtherance of justice pursuant to CPL 210.20 (subd 1, par [i]) and 210.40.
In his answering papers and on argument, the prosecutor took the position that, on his renewal motion, defendant had succeeded in spelling out no broader claim than one of violation of his statutory right to a speedy trial under the provisions of CPL 30.30. In this vein, the prosecutor averred that defendant had failed to assert that his constitutional right to a speedy trial had been denied.
At least to the extent that a claim of an unconstitutional delay in prosecution is concerned, the District Attorney’s contention is baseless. While it is true that defendant’s moving papers might have been drafted more artistically, they do contain allegations of undue and prejudicial lag in prosecution and they do contain assertions, however oblique, that defendant has been deprived of his right to a speedy trial, as safeguarded to him by the Sixth and Fourteenth Amendments. The papers are adequate to raise a justiciable constitutional issue. Thus, this court is not restricted, as the prosecutor suggests, to determining the narrower question of whether defendant’s CPL 30.30 rights have been violated.
The People also argue that the County Court’s decision and order of June 12, 1974, represents the law of the case on the issues of delay in prosecution up to that date and of the disadvantage to defendant occasioned by the earlier death of his psychiatric witness Dr. Locascio. This court recognizes the validity of that proposition, and, although it might not have come to the same result that County Court did on the prior application, it has no intention of reviewing the original order or of allowing the issues disposed of there to be relitigated here.
To the extent that the instant motion amounts to a speedy trial claim covering the period of slightly more than seven months which elapsed between the date on which the first order was entered and the date when the cause was transferred to Supreme Court it will be treated as a renewal application. It goes without saying that the provisions of CPLR 2221 do not prevent this court from hearing and deciding this renewal motion. Once this case was removed to Supreme Court, the County Court was divested of jurisdiction. (Cf. People ex rel. Hirschberg v Supreme Court, 269 NY 392; CPL 230.40; Rules of the App. Div., 2d Dept., 22 NYCRR 681.1 [b].)
In opposing defendant’s renewed speedy trial claim on the *770 merits, the People contend variously that: (1) any delay which occurred in this case prior to December 4, 1972, and particularly during the month of November, 1972, is chargeable to defendant by reason of adjournments requested by him or of time consumed in the pretrial motion stage; (2) they have been "continuously ready” for trial since December 4, 1972, and thus in compliance with the six-month "ready rule” prescribed in CPL 30.30 (subd 1, par [a]); (3) any delay between July 1, 1974 and November 14, 1974, is attributable either to the unavailability of defense counsel or, during the period from July 2, 1974, to September 16, 1974, to time spent by defendant in retaining a psychiatrist to substitute for the deceased Dr. Locascio, in undergoing an examination by the new physician and in procuring a report from him; (4) any delay, either before or after November 14, 1974, not assignable to defendant, is ascribable to court backlogs, calendar congestion and the practice of trying jail cases before bail cases; (5) defendant is not prejudiced by the death of Dr. Locascio, since he may utilize the findings of that deceased psychiatrist upon the trial of this cause; and (6) defendant never applied for a trial preference at any time since the inception of this action.
In support of some of these considerations, the People submitted documentary exhibits taken from the records of the calendar clerk or the office of the District Attorney. These exhibits consisted of calendar markings, lists of jail (24) and bail (11) cases tried in the County Court parts in Westchester between June 1, 1974, and January 8, 1975, and lists of jail (15) and bail (13) cases tried in the criminal parts of Supreme Court, Westchester County, during the same period. The court notes that, of the entire number of cases so listed (63), only 4 were 1972 indictments and that only 3 of those 1972 cases were marked ready prior to the case at bar. These 3 were consolidated for trial purposes. Each of the 4 were bail cases. Of these 63 cases which were so tried, 31 involved 1973 indictments and 28 involved 1974 indictments. Of the 1973 indictments which went to trial, 17 were bail cases. Of the 1974 indictments so tried, 5 were bail cases.
In retort, defense counsel: (1) iterates the detriment worked upon his client by reason of the death of his psychiatric witness; (2) re-asserts his accusation that the District Attorney maneuvers the criminal trial calendars for his own convenience; and (3) denies that he was engaged or otherwise *771 unavailable for trial after June 12, 1974, except for two days in August and for about two weeks, between the 16th of September and the 1st of October of that year, when he was on trial in a murder case in Supreme Court, Bronx County. He admits to the delay during July and much of August and assesses it to the need to find and work with a new psychiatrist. He asserts that there was no excuse for the District Attorney’s failure to call this cause in for trial in late August or in October, November or December.
Defense counsel also urges that, once the first speedy trial motion was denied last June, the People were under an affirmative obligation to see to it that defendant was promptly tried. The prosecutor’s rejoinder to this is to say that "if the defendant’s position is that his motion for a speedy trial placed the burden on the People or the court to grant him a preference in the trial of his case, then he argues a rule of law which is absurd.”
Polemics aside, the Supreme Court of the United States has ruled that, in all criminal prosecutions, the accused has the right to a speedy trial as secured by the Sixth Amendment of the Federal Constitution and enforced against the States by the Fourteenth. (Klopfer v North Carolina, 386 US 213.) In Barker v Wingo (407 US 514), that same court, recognizing the "slippery” quality of the right to a speedy trial and its dependence on the circumstances of each case, devised a balancing test designed to assay claims to the right. In this test, the conduct of the prosecution is weighed against the conduct of the defense. In determining whether a particular defendant has been deprived of his right, a court must give consideration to four factors which were identified in Barker (supra, p 530) as: length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to defendant.
In the present case, this court is somewhat circumscribed in regarding the first factor, the length of the delay. The prosecution was initiated on May 17, 1972, the day following the alleged commission of the crimes charged, by the filing of a felony information. (Cf. People v White, 32 NY2d 393, 398, n 5.) The elapsed time between that date and January 20, 1975, when this action came before this court for trial, was 2% years or 32 months. Seven months earlier, and on June 12, 1974, when County Court denied defendant’s first motion, there had been a lapse of nearly two years and one month since this action had been commenced.
*772 County Court did not find the delay of more than two years unreasonable or prejudicial to defendant. This court cannot overturn that finding. But, this case did not come to an end on June 12, 1974. It was permitted to plod along for another seven months before it was finally assigned to a part for trial. In the view of this court, the length of that additional delay, when coupled with the previous two years and more, is presumptively prejudicial, and it justifies further inquiry and an examination of the other three components of the Barker test.
The next step, then, is to explore and weigh the reason for the length of the delay. Again, the doctrine of the law of the case precludes us from going behind the decision and order entered last June. However, there is nothing to prevent us from making the observation that County Court put the blame for time loss squarely on "congestion of court calendars” and the priority given to the trial of jail cases. Effectively, this finding absolves both the District Attorney and defense counsel of any fault for the delay from May 17, 1972, until June 12, 1974.
This leaves us to deal with the period from June 12, 1974 until January 20, 1975. There is nothing in the papers submitted or in the argument presented by either side to explain what took place in this case between June 12, 1974, and July 2, 1974, although the record does disclose that the case was answered ready by both prosecution and defense on June 19, 1974.
The months of July, August and the first two weeks of September, 1974, seem to have been consumed by defendant in locating a new psychiatrist and in reorganizing his insanity defense. Of course, the People may not be charged with this time, but it would be nothing less than rank cruelty to hold that defendant had waived his right to speedy trial relief by following a judicial directive to go out and to replace his deceased expert with another.
On the other hand, defendant must accept responsibility of the time lost between September 16 and October 1, 1974, while his counsel was engaged in another trial in the Bronx.
As for the remaining time, from October 2, 1974 until January 20, 1975, the People and the court must be held accountable. And court congestion during that interval of nearly four months is not an acceptable excuse for utter failure to bring this case to trial.
*773 This brings into play the third Barker factor, whether defendant has previously complained of an infringement of his entitlement to a prompt trial. He did and he was turned away by the County Court. At the point in time, last June, when relief was denied, the obligation of the District Attorney and the court to afford defendant a trial was enhanced to a degree where it became paramount to overcrowded courts and court rules of precedence, and those factors had to give way to defendant’s Sixth Amendment right.
In this connection, it should be noted that the People take refuge in the six-month "ready rule” of CPL 30.30 and in the fashion in which the New York Court of Appeals interpreted the clause in that statute, "where the people are not ready for trial”, in People ex rel. Franklin v Warden, Brooklyn House of Detention for Men (31 NY2d 498). To be sure, the court in Franklin refused to construe that clause (pp 501-502) "as demanding not only that prosecutor be ready [for trial in six months in a felony case] but that court facilities also be available.” But this ruling may not be enlarged, as the People suggest, so as to relieve the District Attorney and the courts of their duty to make every good faith effort to give a defendant his constitutional right to a speedy trial.
It must be remembered that even in Franklin, the majority of the court ordered that the cases there "be granted such a trial preference as to assure that trial will be commenced within three months from the date hereof or within such extension thereof as may be granted by the Kings County Supreme Court on showing of justifiable excuse on the part of either the District Attorney or the defendant arising subsequent to the date hereof and unrelated to congested calendars or lack of court facilities. ” (31 NY2d 498, 503, supra; emphasis added.)
On this subject of calendar and court congestion, it should be further noted that the prosecutor failed to demonstrate that it would not have been possible to bring defendant to trial between June 12, 1974, or even October 2, 1974, and the 20th of January, 1975, when the case was called in. To illustrate this, this court calls attention to the Mirando case (Westchester County, Ind. No. 74-103), which is included in the list of bail cases tried in Supreme Court in this county between June 1, 1974 and January 8, 1975. An examination of the records of that action reveals that it was transferred from County Court to Supreme Court on June 17, 1974, just five *774 days after County Court denied the first speedy trial motion in the case at bar, and that it was tried from September 20, 1974 through September 27, 1974, when it ended in a jury disagreement. Mirando was back for retrial on January 20, 1975, subject to a defense motion to obtain the transcript of the first trial at public expense. If Mirando, which according to the People’s exhibit was first marked ready on May 24, 1974, could move so swiftly, then defendant’s action could have been brought to trial between June 12, 1974 and January 20, 1975. The movement in Mirando robs the People’s court congestion argument of force. (Cf. People v Miller, 34 NY2d 336, 338.)
Finally, this court turns to the fourth part of the Barker test, whether defendant has been prejudiced by the delay here. In looking at this factor, the first thing which comes to mind with respect to the case at bar is the question of whether the death of defendant’s psychiatrist impaired his defense. While the Barker court regarded the death of a witness during a delay as obvious prejudice (407 US 514, 532, supra), County Court did not see it that way on the prior motion. By reason of that fact, this court is barred from reexamining that point.
There is, however, another basis upon which defendant can assert actual prejudice suffered. The lodging of the criminal charges here brought defendant’s promising career, with what has been said to be the finest police force in the world, to an abrupt halt. Suspended from duty, without pay, on the very day on which the charges were preferred, his only chance to return to that service was to exonerate himself in an early trial. Each day, each week, each month, each year that this case has dragged on, defendant’s chances for exoneration have grown slimmer.
If, as Mr. Justice Lawrence J. Tonetti has recently held in People v Sherrod (NYLJ, Feb. 27, 1975, p 16, col 4), the loss of an opportunity to obtain a concurrent sentence represents real and practical prejudice to an incarcerated defendant deprived of the right to a speedy trial (see, also, Smith v Hooey, 393 US 374, 378), then the loss of an opportunity to resume a career in law enforcement must also qualify as the sort of prejudice envisioned in Barker. (Cf. Moore v Arizona, 414 US 25, 26-27.)
After weighing everything, this court is of the opinion that the facts warrant a dismissal of the indictment in this case. Since the government has denied defendant a speedy trial, *775 then it must be deprived of its interest in seeking a conviction. The remedy of absolute discharge is the only remedy that effectively protects the individual’s right to a speedy trial. (Cf. Strunk v United States, 412 US 434, 440.)
Accordingly, the indictment is dismissed, defendant is discharged and his bail is exonerated.